## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCH OF
CELLULAR TELEPHONES:

1)      T-MOBILE phone number ending -8692,
WITH IMSI 310260343486559

2)      T-MOBILE phone number ending -2878,
WITH IMSI 310260905300144

3)      T-MOBILE phone number ending -6606,
WITH IMSI 310260074421226

4)      T-MOILE phone number ending -4716,
WITH IMSI 310260073608268

Case No.

December 1, 2019

3:19 mj 1704 (WIG)
3:19 mj 1705 (WIG)
3:19 mj 1706 (WIG)
3:19 mj 1707 (WIG)

## AFFIDAVIT IN SUPPORT OF
## FOUR SEARCH WARRANTS SEIZED ON NOVEMBER 17, 2019

I, Andrew M. Hoffman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the

location of two cellular telephones identified below and in Attachment A, as target telephones 1

and 2, respectively (collectively, the "Target Telephones"). The location information to be seized

is described herein and in Attachment B.

2.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and

have been so employed since 1998. Upon completion of the DEA Academy in Quantico, I was

assigned to the DEA New York Division Office in New York City. In 2008, I was selected for a

foreign assignment with the DEA Caribbean Division where I was stationed on the island of

Curacao.  In 2013, upon completion of the foreign assignment, I was assigned to my current

1



assignment as part of the Bridgeport High Intensity Drug Trafficking Area Task Force ("Task Force"), which is comprised of personnel from the DEA, Connecticut State Police, Norwalk Police Department, Stamford Police Department, Stratford Police Department, and Milford Police Department.  Prior to joining the DEA, I was a Probation and Parole Officer for the State of Florida for approximately five years.

3.      During the course of my career, I have participated in hundreds of criminal investigations, including investigations into suspected narcotics trafficking and money laundering.  My participation in the investigations has included coordinating controlled purchases of narcotics utilizing confidential informants, cooperating witnesses and undercover law enforcement officers; coordinating the execution of search and arrest warrants; conducting electronic and physical surveillance; analyzing records related to narcotics trafficking; testifying in Grand Jury and District Court proceedings; and interviewing individuals and other members of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport and distribute controlled substances.

4.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18 of the United States Code in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated therein.  I am the case agent on the investigation which is the subject of this affidavit and have personally participated in the investigation concerning violations of the federal laws listed herein.

5.      I have participated fully in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2)



information provided to me by members of the Stamford Police Department; (3) information provided by witnesses and other sources of information; and (4) my experience and training. Unless otherwise indicated, all conversations and statements described in this affidavit are related in substance and part.

6.      I have participated fully in this investigation and, as a result of my participation and information received from other law enforcement officers, I am thoroughly familiar with the circumstances of the investigation and the information set forth in this affidavit. Because this affidavit is being submitted for the limited purpose I have not included each and every fact known to me regarding this investigation. Rather, I have provided only that information necessary to provide probable cause to support the described application.

## **THE TARGET TELEPHONES**

7.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—four cellular telephones seized by the DEA on November 17, 2019—which are currently in the possession of the DEA Bridgeport Resident Office:

8.      The devices to be searched are described as follows:

**TARGET TELEPHONE 1**: a mobile telephone with telephone number ending -8692 and IMSI: 310260343486559, subscribed to Isidro Tinajero at 327 S. Elm St., Wallingford, CT 06492, but believed to be utilized by investigation target Jesus GOMEZ, with service provided by T-Mobile USA.

**TARGET TELEPHONE 2**: a mobile telephone with telephone number ending -2878 and IMSI: 310260905300144, subscribed to Lisa Perez at 38 Woodland St., Meriden, CT 06451, but believed to be utilized by investigation target Abisael PEREZ, with service provided by T-Mobile USA.

**TARGET TELEPHONE 3**: a mobile telephone with telephone number ending -6606 and IMSI: 310260074421226, subscribed to Carlo Suarez at 33 Center St.,



Meriden CT 06450, but believed to be utilized by investigative target Abisael PEREZ, with service provided by T-Mobile USA.

**TARGET TELEPHONE 4**: a mobile telephone with telephone number ending -4716 and IMSI: 310260073608268 subscribed to Rosalind Rivera at 185 Atkins St., Meriden, CT 06450 but believed to be utilized by investigative target Heriberto BORRERO, with service provided by T-Mobile USA

(Collectively hereinafter the "TARGET DEVICES"), and the extraction from those devices of electronically stored data particularly described in Attachment E.  As is more fully set forth below, there is probable cause to believe that the TARGET DEVICE constitutes and contains evidence, fruits and/or instrumentalities of violations and attempted violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C) and 846, conspiracy to possess with intent to distribute and distribution of heroin (collectively, the "TARGET OFFENSES"), as more fully described in Attachment E.

## PROBABLE CAUSE

9.      Beginning in October 2019, investigators received information from a cooperating source ("CS-1") who has been a cooperating source since 2017 and is working for financial compensation and assistance with his immigration status. CS-1 has been providing information that has been corroborated and proven reliable. Investigators have corroborated information provided by CS-1 during the course of this investigation.

10.     CS-1 provided information to investigators that a subject subsequently identified as Mexican National Jesus GOMEZ ("GOMEZ ") and a subject subsequently identified as Abisael PEREZ ("PEREZ") were involved in the distribution of multi-kilogram quantities of heroin in the Meriden, Connecticut area. GOMEZ was involved as a broker who in November 2019 introduced CS-1 to PEREZ as a heroin source who had the ability to provide large quantities of heroin to CS-1. CS-1 identified Target Telephone 1 as GOMEZ's cellular telephone



number that he utilized to arrange the distribution of heroin. CS-1 did not have a contact telephone number for PEREZ but during October 2019, investigators were conducting surveillance of GOMEZ and observed him meeting with the occupant of a black Pontiac sedan bearing Connecticut registration AS-52539 that was registered to a Lisa PEREZ, 38 Woodland Street, Meriden, Connecticut in the parking lot of a McDonald's Restaurant in Meriden, Connecticut. I know that drug dealers often conduct narcotics related meetings in parking lots of shopping centers and restaurants as a way to detect law enforcement surveillance.

11.     Investigators queried law enforcement databases and identified a New York State Police report from July 2019. In the police report, a State Trooper received a call regarding a disabled vehicle on the right shoulder of the southbound side of I-95 in New Rochelle, New York. The Trooper made contact with the operator, identified as Abisael PEREZ and noted that the disabled vehicle was a black Pontiac bearing Connecticut registration AS-52539. Furthermore, PEREZ provided the trooper with a phone number known to me as Target Telephone 2. Investigators reviewed telephone records for Target Telephone 1 and determined that prior to GOMEZ meeting with the occupant of the black Pontiac at the McDonald's parking lot, Target Telephone 1 was in contact with Target Telephone 2 on multiple occasions. Investigators obtained a photograph of PEREZ from law enforcement databases and showed CS-1 a picture of PEREZ.  CS-1 identified PEREZ as the person who was the heroin source.

12.     On October 30, 2019, the Honorable United States Magistrate Judge William I. Garfinkel authorized a Pen Register Device and Precise Location Data ("E-911") monitoring for Target Telephone 2.

13.     During November 2019, investigators arranged for the controlled purchase of approximately 50 grams of heroin from GOMEZ and PEREZ. At the direction of agents, CS-1



made a consensually monitored and recorded telephone call to GOMEZ at Target Telephone 1. During the telephone call, GOMEZ directed CS-1 to his job site located at 319 Main St., East Berlin, Connecticut. This location was a construction site for a residential apartment complex under construction. At the time of the telephone call to Target Telephone 1 investigators observed a white colored Ford F-150, bearing Massachusetts registration 9AVB60 parked at 319 Main St. This vehicle was registered to Isidrio TINAJERO.  That name was an alias used by GOMEZ and a vehicle previously identified as being used by GOMEZ. During a subsequent controlled telephone call to Target Telephone 1 that was consensually monitored and recorded, GOMEZ told CS-1 that the guy was still traveling to the meeting location and would be there soon.  A review of judicially authorized E-911 data for Target Telephone 2 revealed that that telephone had been pinging in the Bronx, New York but had traveled to the vicinity of I-95 in Norwalk, CT at the time of the telephone call between GOMEZ and CS-1.

14.     In anticipation of the controlled meeting, investigators met with CS-1 at a pre-determined neutral location and searched CS-1 and the CS-1's vehicle for contraband with negative results. The CS-1 was provided with a quantity of buy money. The serial numbers of the buy money were recorded prior to the controlled buy. The CS was provided with a "kel" transmitter and digital recorder.  Investigators surveilled CS-1 from the neutral location to the construction site at 319 Main St. Investigators observed CS-1 meet with GOMEZ at the construction site.

15.     Subsequently investigators observed a red Nissan Rogue bearing Connecticut registration AK-52658 arrive at the location and PEREZ exit the passenger side of the Rogue and meet with CS-1 and GOMEZ. Investigators further observed all three subjects enter one of the buildings in the complex that were still under construction. The Nissan bearing Connecticut



registration AK-52658 was registered to Lisa PEREZ, 38 Woodlawn St., Meriden, CT which was the same registered owner of the black Pontiac. A review of judicially authorized E-911 data for Target Telephone 2 revealed that the phone was pinging in the vicinity of 319 Main St., East Berlin, Connecticut.

16.     At the conclusion of the meeting, investigators observed all three subjects exit the building, PEREZ return to the Rogue and depart and CS-1 return to his vehicle and depart. Investigators surveilled CS-1 back to the neutral location. At the neutral location, CS-1 turned over a hard round shaped object wrapped in red and green plastic wrapper that was subsequently field tested positive for heroin. CS-1 also turned over the kel transmitter and digital recorder. CS-1 and the CS-1's vehicle were searched for contraband with negative results. CS-1 told investigators that he observed PEREZ with a small sized semi-automatic pistol concealed in the lining of his jacket. While monitoring the kel transmission, an investigator who was fluent in the Spanish language heard PEREZ tell CS-1 that he would never let the police arrest him. At the end of the meeting, PEREZ offered to sell CS-1 two kilograms of heroin in exchange for $95,000.

17.     On November 16, 2019, CS-1 received a text message from GOMEZ using Target Telephone 1. The text message was in the Spanish language and reviewed by an investigator who was fluent in the Spanish language. The message directed CS-1 to telephone "the lazy guy" at Target Telephone 3.  Based on my training and experience, I know that drug traffickers will utilize coded conversation when conducting electronic communications to thwart law enforcement detection. I believe that GOMEZ's reference to "the lazy guy" was a coded message to CS-2 that PEREZ was using Target Telephone 3. Further, PEREZ had not previously provided his cellular telephone number to CS-1. Investigators identified it through other investigative



techniques. I know based on my training and experience that drug traffickers often use multiple cellular telephones to conduct their narcotics related business.

18.     Later on November 16, 2019, CS-1 placed an outgoing telephone call to PEREZ using Target Telephone 3. An investigator, who was fluent in the Spanish language, monitored the telephone call which was also recorded by investigators. PEREZ told CS-1, in sum and substance, that he was planning on traveling to Connecticut this weekend and that he was planning on dropping off the two kilograms of heroin for CS-1 to GOMEZ. CS-1 told PEREZ that he did not have the entire $95,000 for the two kilograms. PEREZ told CS-1 that he would provide CS-1 with the two kilograms as long as CS-1 had money for at least one kilogram ($47,500).

19.     On November 17, 2019, at approximately 12:50 a.m., CS-1 received an incoming text message from PEREZ, using Target Telephone 2 which stated in sum and substance that PEREZ had the heroin ready and that he was going to drop it off the next morning.  Investigators reviewed the E-911 ping for Target Telephone 2 and saw that, at around 6:00 am, PEREZ was travelling north on I-95 towards New Rochelle, New York.  At that point, investigators set up surveillance in the vicinity of GOMEZ's apartment at 327 South Elm Street in Wallingford.  At approximately 8:45 a.m., GOMEZ send a text message to CS-1 asking him what time he was going to come up to the Wallingford area.  At the direction of agents, CS-1 responded that he did not believe he could make the trip that day.  At approximately 9:18 a.m., CS-1 called GOMEZ at Target Telephone 1 to discuss with him further when they would be able to make the exchange. During that phone call, CS-1 suggested that they do the transaction the next day (November 18, 2019) but GOMEZ indicated that today would be better.  During the time GOMEZ was on the phone with CS-1, agents observed him walking behind his apartment while on his cellular phone.

8

20.     For the remainder of the morning, agents surveilled GOMEZ as he travelled from Wallingford into Meriden using the white Ford F-150 he was previously seen driving. Once in Meriden, he went to the McDonald's restaurant at 412 West Main Street and parked his vehicle. At 11:22 a.m., PEREZ entered GOMEZ's vehicle and remained there for approximately 40 minutes. At approximately 12:00 pm, PEREZ exited GOMEZ's vehicle and went inside of the McDonald's. At 12:01, CS-1 sent a text message to Target Telephone 1 to GOMEZ stating that he would be there in two hours and to "have that ready." GOMEZ responded using Target Telephone 1 at 12:13 p.m. that he would wait for him at the construction site. Investigators believed he was referring to the construction site in Berlin where the previous purchase of heroin had occurred.

21.     After GOMEZ left the McDonald's parking lot, he drove through various parts of Meriden until he ultimately stopped at Irving Gas Station at 978 Broad Street in Meriden for approximately 20 minutes. After that, GOMEZ returned to his vehicle and began driving north on I-691 and I-91 and exited I-91 at exit 21 in Cromwell. He then stopped at a Krauzer's convenience store at 117 Berlin Road in Cromwell for approximately 20 minutes. Thereafter, GOMEZ traveled directly to the construction site at 319 Main Street, Berlin.

22.     At 1:33 p.m., CS-1 called Gomez on Target Telephone 1 and told him he would be arriving in approximately an hour and a half. GOMEZ responded that he was already at the construction site and that "the other guy" would be there in about a half hour. Based on the investigation, agents believed GOMEZ was referring to PEREZ. Agents on surveillance confirmed that GOMEZ was at the construction site during that phone call. At 2:08 p.m., CS-1 received a text message from GOMEZ that said everything was ready.

23.     At 1:59 p.m., a red Nissan Maxima bearing Connecticut registration 9ALBV8,

pulled in the construction site parking lot.  The driver of the Nissan Maxima parked next to a dumpster behind an unfinished building out of the view of agents' surveillance.  At 2:57 p.m., CS-1 received a text message from GOMEZ using Target Telephone 1 which stated, in Spanish, "tell me cousin," to which CS-1 responded that he was driving and he would call him.  GOMEZ then said "it's good."

24.     At approximately 3:13 p.m., agents observed a heavy-set Hispanic male with a black zip-up hoodie, later identified as Heriberto BORRERO, DOB XX/XX/1994, walking between the dumpster and the garage.  At 3:39 p.m., CS-1 called GOMEZ and they agreed to meet at the Cromwell Diner.  Agents observed the white pick-up truck GOMEZ was driving exit the construction site parking lot immediately after the phone call terminated.  Agents observed an individual in the passenger seat, who later was determined to be PEREZ.

25.     At that point, because agents had information that PEREZ may be armed, they devised a plan to perform a motor vehicle stop of the vehicle GOMEZ was driving using marked state and local police vehicles.  Officer Jeffrey Dubuk of the Berlin Police Department followed GOMEZ's vehicle and activated his lights and sirens approximately one-quarter mile from the construction site exit.  GOMEZ pulled his vehicle over without incident. Agents seized Target Telephone 1 from GOMEZ.  PEREZ was seated in the front passenger seat and BORRERO was seated in the rear passenger seat.  All three individuals were removed from the vehicle, advised of their *Miranda* rights and detained in handcuffs.  When PEREZ was asked what his name was, his responded that it was "Rafael Nunez."  Hours later, he admitted that his true name was Abisael PEREZ, that the drugs were his and that the other individuals did not have anything to do with the drugs. Agents seized Target Telephones 2 and 3 from PEREZ which were located next to where PEREZ was sitting in the front passenger seat in GOMEZ's pick-up truck. Agents

telephoned Target Telephone 2 and verified the telephone number for Target Telephone 2.

Agents later verified the telephone number for Target Telephone 3 by placing an outgoing 911

call from the telephone to the Connecticut State Police 911 emergency dispatch center who were

able to identify the telephone number of Target Telephone 3 to agents.

26.     On BORRERO's person, agents found a Nissan key which was later determined

to be for the Nissan Maxima that PEREZ had driven to the construction site. Agents seized

Target Telephone 4 from BORRERO which was located next to where BORRERO was sitting in

the rear passenger seat of GOMEZ's pick-up truck. Agents later verified the telephone number

for Target Telephone 4 by placing an outgoing 911 call from the telephone to the Connecticut

State Police 911 emergency dispatch center who were able to identify the telephone number of

Target Telephone 4 to agents.

27.     Agents returned to the construction site and observed the Nissan Maxima, which

was locked and parked in the same location agents originally observed it.  Trooper David Misenti

and K9 Yodel responded to the scene to perform a K9 sniff of the vehicle.  Trooper Misenti led

Yodel around the vehicle, beginning at the front of the vehicle and making his way toward the

trunk.  Agents opened the vehicle using the key found on BORRERO's person and Trooper

Misenti directed K9 Yodel to search the inside of the vehicle.  K9 Yodel alerted for the presence

of narcotics in the center console of the vehicle, but only U.S. currency was located therein.  K9

Yodel then was directed toward the trunk of the vehicle, which was closed, where she

immediately alerted again for the presence of narcotics.  Agents then opened the trunk of the

vehicle and K9 Yodel entered the trunk of the vehicle and indicated again in the right rear corner

of the trunk.  Agents then looked in the area where K9 Yodel indicated and found a black

backpack.  Inside the backpack were some items of clothing and a plastic bag containing two



cylindrical shaped packages wrapped in orange and white plastic.

28.    DEA agents took custody of the two cylindrical packages. The first package, which was wrapped in white plastic, was tested using the TruNarc handheld narcotics analyzer and field tested positive for the presence of heroin. The package had a gross weight of 1,624 grams.

29.    The second package, which was wrapped in orange plastic, was tested using the TruNarc handheld narcotics analyzer and field tested positive for the presence of heroin. The package had a gross weight of 1,180 grams.

30.    On November 18, 2019, the Honorable Robert A. Richardson, United States Magistrate Judge, authorized a criminal complaint for GOMEZ, PEREZ, and BORRERO for drug distribution conspiracy charges. On November 26, 2019, a federal grand jury returned an indictment for GOMEZ, PEREZ, and BORRERO for violations of 21 U.S.C 841(a)(1) and 846, conspiracy to possess with intent to distribute and distribution of heroin.

31.    I know from my training and experience that drug traffickers routinely use mobile telephones to communicate with coconspirators to conduct drug-related transactions, including to arrange meet locations, negotiate prices of drug transactions, and to facilitate other aspects of ongoing narcotics activity. I believe that Target Telephones 1, 2, 3 and 4 are being used, in part, for that purpose. Further, toll records from Target Telephone 2 from November 17, 2019 identified approximately seven contacts with Target Telephone 4 with approximately six of the contacts as SMS Text Messages. There was also contact between Target Telephone 2 and Target Telephone 4 on the days preceding the November 17, 2019 seizure of heroin. Contact between PEREZ and BORRERO prior to the November 17, 2019 seizure of heroin is consistent with communication between co-conspirators. I believe that the forensic analysis of Target

Telephones 1, 2, 3, and 4 would lead to the collection of additional evidence of the conspiracy between GOMEZ, PEREZ, BORRERO and others yet identified.

## FORENSIC ANALYSIS OF CELL PHONES

32.     The analysis of electronically stored data, whether performed on site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying the file directories and any individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the  warrant); conducting a file by file review of the data; examining all the structured, unstructured, deleted, and free space data on a particular piece of media; opening or reading the first few pages of each file in order to determine their precise contents; scanning storage areas to discover and possibly recover deleted data; scanning storage areas for deliberately hidden files; and performing electronic key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

33.     Digital files or remnants of such files can be recovered months or even years after they have been downloaded or copied onto cell phone devices, deleted, or simply viewed via the Internet.  Electronic files downloaded or copied onto cell phone devices can be stored for years at little to no cost.  Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.  When a person "deletes" a file, the data contained in the file does not actually disappear; rather, that data remains on the device until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space   that is, in space on the device that is not allocated to an active file or that is

13

unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

34.     In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically maintains a fixed amount of space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a device depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and habits.  As noted, it is not at all uncommon to recover files deleted months or years before.

35.     Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36.     Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

37.     With regard to the TARGET DEVICE, I request permission to enter and search the device for evidence relating to the TARGET OFFENSES, as more fully described in Attachment B.

38.     It is also requested that this Court grant permission to retrieve the above-described

14

stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.  It is also requested that the warrant be deemed executed once the TARGET DEVICE has been seized in the manner described above, and that further analysis of the TARGET DEVICE be permitted at any time thereafter.

## CONCLUSION

Based on the foregoing, there is probable cause to believe, and I do believe, that Abisael PEREZ, DOB XX/XX/1975, Jesus GOMEZ, DOB XX/XX/1963, and Heriberto BORRERO, DOB XX/XX/1994, conspired to possess with intent to distribute and distribute a controlled substance, that is, heroin and the forensic analysis of Target Telephones 1, 2, 3 and 4 that were seized from PEREZ, GOMEZ and BORRERO will lead to the identification of additional evidence of the conspiracy between PEREZ, GOMEZ and BORRERO and others yet unidentified.

The foregoing is true and accurate to the best of my knowledge.

Respectfully submitted,

Andy Hoffman
~~Task Force Officer~~ *Special Agent*
Drug Enforcement Administration

Subscribed and sworn to before me on this _16_ day of December, 2019, at Bridgeport, Connecticut

/s/ William I. Garfinkel

HON. WILLIAM I. GARFINKEL
UNITED STATES MAJISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The property to be searched is the following cell phone (hereinafter, the "TARGET DEVICE"), which is presently in the custody of the Drug Enforcement Administration Bridgeport Resident Office and which was seized upon the arrest of Jesus GOMEZ on or about November 17, 2019:

> **TARGET TELEPHONE 1**: a mobile telephone with telephone number ending -8692 and IMSI: 310260343486559, subscribed to Isidro Tinajero at 327 S. Elm St., Wallingford, CT 06492, but believed to be utilized by investigation target Jesus GOMEZ, with service provided by T-Mobile USA.

## ATTACHMENT B

### Property to Be Searched

The property to be searched is the following cell phone (hereinafter, the "TARGET DEVICE"), which is presently in the custody of the Drug Enforcement Administration Bridgeport Resident Office and which was seized upon the arrest of Abisael PEREZ on or about November 17, 2019:

> **TARGET TELEPHONE 2**: a mobile telephone with telephone number ending -2878 and IMSI: 310260905300144, subscribed to Lisa Perez at 38 Woodland St., Meriden, CT 06451, but believed to be utilized by investigation target Abisael PEREZ, with service provided by T-Mobile USA.

## ATTACHMENT C

### Property to Be Searched

The property to be searched is the following cell phone (hereinafter, the "TARGET DEVICE"), which is presently in the custody of the Drug Enforcement Administration Bridgeport Resident Office and which was seized upon the arrest of Abisael PEREZ on or about November 17, 2019:

> **TARGET TELEPHONE 3**: a mobile telephone with telephone number ending -6606 and IMSI: 310260074421226, subscribed to Carlo Suarez at 33 Center St., Meriden CT 06450, but believed to be utilized by investigative target Abisael PEREZ, with service provided by T-Mobile USA.

## ATTACHMENT D

### Property to Be Searched

The property to be searched is the following cell phone (hereinafter, the "TARGET DEVICE"), which is presently in the custody of the Drug Enforcement Administration Bridgeport Resident Office and which was seized upon the arrest of Heriberto BORRERO on or about November 17, 2019:

> **TARGET TELEPHONE 4**: a mobile telephone with telephone number ending -4716 and IMSI: 310260073608268 subscribed to Rosalind Rivera at 185 Atkins St., Meriden, CT 06450 but believed to be utilized by investigative target Heriberto BORRERO, with service provided by T-Mobile USA



## ATTACHMENT E

### Particular Things to be Seized

1. All information including photographs, images, videos, correspondence, communications, records, documents, electronic mail, electronic messages, text messages, chats, chat logs, notes, calendars, contacts, call logs, voicemails, journals, diaries, credit/debit card and financial information, and other materials, and any associated metadata, EXIF information, and GPS or geo-location information, in any format, that constitute fruits, evidence and instrumentalities of the crimes of conspiracy to possess with intent to distribute and distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846 (collectively, the "TARGET OFFENSES"), including, but not limited to, the following:

   a. Photographs and videos of any individuals involved in illegal activity;
   b. Evidence of communications, in any form, involving any of the individuals involved in the TARGET OFFENSES;
   c. Evidence of narcotics in any form, involving any individual;
   d. Evidence of the use of the Internet in furtherance of a drug trafficking crime;
   e. The telephone number, ESN number, serial number, SIM card numbers, and/or any other identifying information of the TARGET DEVICE;
   f. Any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the TARGET DEVICE;
   g. Records of Internet Protocol addresses;
   h. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;
   i. All bank records, checks, credit card bills, account information, and other financial records;
   j. Evidence of the fruits or proceeds of a drug trafficking operation, including but not limited to photos, videos, or communications involving U.S. currency, homes, and cars;

2. Evidence identifying who owned, used, accessed, or controlled the TARGET DEVICE;

3. Evidence indicating how and when the TARGET DEVICE was accessed or used, and evidence indicating the geographic location of the TARGET DEVICE's access or use;

4. Passwords and encryption keys, and other access information that may be necessary to access the TARGET DEVICE.

Seizure is further authorized of evidence of user attribution showing who used, owned, accessed, or controlled the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;



As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described devices may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device.

To the extent that the TARGET DEVICE contains removable storage media, examination of such removable media is specifically authorized for the same evidence as described in this attachment.